**In re Betty A. CABBAGESTALK, Debtor.**

**Betty A. Cabbagestalk, Plaintiff,**

**v.**

**Wendover Financial Services, Inc., assignee of Amresco Residential Corporation; Amresco Residential Mortgage Corporation; Liberty Furnace Corporation, Inc., Defendants.**

**Bankruptcy No. 99–26025–JKF.**
**Adversary No. 00–2540–JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 4, 2001.

34

Joy M. Smith, Pittsburgh, PA, for debtor.

Thomas A. Crawford, Jr., Pittsburgh, PA, for Liberty Furnace Corporation, Inc.

**MEMORANDUM OPINION**[1]

JUDITH K. FITZGERALD, Chief Judge.

The Debtor filed an Amended Complaint to Determine the Extent of Secured Status and Objection to Claim. The Amended Complaint added Liberty Furnace Corporation, Inc. ("Liberty Furnace") as a defendant. Liberty Furnace's Answer raises statute of limitations defenses and asserts that the Debtor has failed to state a claim upon which relief may be granted and seeks dismissal of the complaint. Liberty Furnace claims that the Debtor has no cause of action under the Pennsylvania Home Improvement Finance Act ("HIFA"). 73 P.S. § 500–101 et seq. Specifically, Liberty Furnace claims that since it did not finance the home improvement work, the HIFA is inapplicable. For the following reasons, we find that the Debtor has stated a claim upon which relief may be granted, and that an evidentiary hearing is necessary to resolve factual disputes.

*Facts*

Debtor and Liberty Furnace disagree on how and by whom the financing for Debt-

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

or's home improvement loan was acquired. Both parties agree that after the financing was obtained, contractors began remodeling the Debtor's home in January 1998. The contractors completed the work in approximately three and one-half weeks. Debtor filed a chapter 13 bankruptcy petition on August 13, 1999. On October 6, 2000, the Debtor filed an adversary action against Wendover Financial Services, Inc. ("Wendover") and AMRESCO Residential Mortgage Corporation ("AMRESCO").[2] The Debtor filed an amended complaint adding Liberty Furnace as a defendant on February 23, 2001. Liberty Furnace is the only defendant remaining in this adversary action, and the only matter remaining is the applicability of HIFA.

Debtor's version of events is as follows. Debtor lives in a home she and her now-deceased boyfriend purchased upon completion of a land installment contract in 1995. In September 1997, the Debtor noticed an advertisement placed in her mail slot. The advertisement offered homeowners a no money down, low monthly payment, home rehabilitation consolidation loan. The advertisement contained details of the types of improvements and remodeling available. The advertisement directed an interested homeowner to call the toll free number provided and ask for Jack. Debtor called the number and spoke with a man simply known as Jack. Jack then

came to her house to assess the work Debtor wished to have done. Debtor claims that Jack returned to her house a second time to fill out several documents. The Debtor signed a document entitled Home Improvement Contract on a Liberty Furnace pre-printed form. The contract listed the work to be done on Debtor's home at a price of $16,500.[3] Jack told Debtor that he would find someone to finance the work. The Debtor then claims that an unknown man came to her house with additional documents on or about January 8, 1998. Debtor claims she signed these documents in reliance upon assurances the unknown man made to her that the documents were necessary to secure financing for her home repairs. The Debtor signed documents obligating her to pay for a $21,600 Home Equity Loan with a 30 year term at an Annual Percentage rate of 16.324 percent. According to Debtor's Settlement Statement, she paid Nationwide Mortgage a mortgage broker's fee of $2,160. The Settlement Statement also revealed various amounts which would be spent paying off overdue taxes and other bills. Debtor received a check to pay off her gas bill, but she is unsure whether the other bills were paid. Debtor also received a check in the amount of $10,783.82. However, Liberty Furnace called the Debtor and instructed her not to

---

**2.** On June 30, 2000, the Court entered an Assignment of Claims between Wendover and AMRESCO. Under the Assignment of Claims, Wendover accepted liability for all claims against AMRESCO in this case. On November 18, 2001, this Court entered a Stipulation Between Debtor and Wendover to Resolve Adversary Action. Pursuant to this agreement, Wendover has agreed to reduce the Debtor's mortgage amount by $15,000 to $6,191.55, and the Debtor has fully released Wendover from liability.

**3.** Although a second contract was later negotiated for $10,000, the repairs essentially re-

mained the same. The second contract, dated October 12, 1997, listed the following repairs to be made:

 a. Custom make 8 vinyl windows with screens.
 b. Install suspended ceiling in bedroom—Do not panel walls. (The parties dispute whether the contract originally included the phrase "Do not panel walls".)
 c. Carpet bedroom.
 d. Spot plaster and paint hall on second floor and downstairs to first floor.
 e. Fix banister on second floor hall.

cash the check, as it would be canceled, and that a new check would be mailed directly to Liberty Furnace. Upon completion of the repairs in late January 1998, Debtor signed a statement that she was satisfied with the completed work. The suspended ceiling in Debtor's bedroom fell in November 1998. Debtor called Liberty Furnace, and it repaired her ceiling. The ceiling fell again in June and December of 1999. Debtor called Liberty Furnace again in each instance, but Liberty Furnace refused to make additional repairs free of charge. Debtor has recently hired a contractor to review the work done by Liberty Furnace. The contractor's appraisal of the value of the work done is $5,990. Debtor now claims the work done on her house is incomplete and substandard.

Liberty Furnace's version of events is as follows. Liberty Furnace is a general contractor. All repair and remodeling work is done by sub-contractors. Jerry Lebovitz is the President and CEO of Liberty Furnace. Liberty Furnace has no other employees. Independent contractors supply and write up contracts on its behalf. Liberty Furnace claims that it has no working relationship nor is it an agent of either Wendover or AMRESCO. Liberty Furnace claims that it was approached by Nationwide Mortgage to perform the work Debtor wished to have completed for $16,500. However, after it was unable to arrange sufficient financing, Nationwide Mortgage asked Liberty Furnace if it would accept the job for $10,000. Liberty Furnace agreed. Liberty Furnace claims that it completed the work to the Debtor's satisfaction. Liberty Furnace claims it played no role in securing financing and, therefore, no cause of action exists under HIFA.

Debtor brings a variety of claims against Liberty Furnace under numerous theories.

The two year statute of limitations bars most of Debtor's causes of actions, and the only matter remaining is whether a cause of action exists under HIFA. For the purposes of determining whether Debtor has stated a cause of action, we assume certain facts as stated by the Debtor.

The Pennsylvania Home Improvement Finance Act, 73 P.S. §§ 500–102(10), provides as follows:

(10) "Home improvement installment contract" or "contract" means an agreement covering a home improvement installment sale, whether contained in one or more documents, together with any accompanying promissory note or other evidence of indebtedness, to be performed in this Commonwealth pursuant to which the buyer promises to pay in installments all or any part of the time sale price or prices of goods and services, or services. The meaning of the term does not include such an agreement, if (i) it pertains to real property used for a commercial or business purpose; or (ii) it covers the sale of goods by a person who neither directly nor indirectly performs or arranges to perform any services in connection with the installation of or application of the goods; or (iii) it covers only an appliance designed to be freestanding and not built into and permanently affixed as an integral part of the structure such as a stove, freezer, refrigerator, air conditioner, other than one connected with a central hearing system, hot water heater and the like: or (iv) it covers the sale of goods and the furnishing of services or the furnishing of services thereunder for a cash price stated therein of three hundred dollars ($300) or less; or *(v) the loan is contracted for or obtained directly by the retail buyer from the lending institution, person or corporation;* or (vi) the loan is insured, or a written

commitment to insure it has been issued, pursuant to national housing legislation. (Emphasis added).

 Other than subsection (v), the exceptions are clearly inapplicable to Liberty Furnace. A cause of action under the HIFA requires a contractor to both finance and perform home improvements. HIFA does not apply to direct loans obtained by the homeowner. Liberty Furnace's contract is clearly for home improvements. The remaining issue is whether, assuming Debtor proves the allegations, the contractor's role in securing financing eliminates the exception for direct loans contained in 73 P.S. §§ 500–102(10)(v). We hold that it does.

Several courts in this jurisdiction, including both district and bankruptcy courts, have held that a cause of action under HIFA is applicable to a contractor who does not directly provide financing but secures financing for a homeowner. *See Gonzalez v. Old Kent Mortgage Co.*, 2000 WL 1469313 (E.D.Pa. Sept. 21, 2000); *In re Barber*, 266 B.R. 309 (Bankr.E.D.Pa. 2001); *In re Brown*, 134 B.R. 134 (Bankr. E.D.Pa.1991). When a homeowner is passive in securing financing, courts have applied HIFA to a contractor who acted in essentially one transaction to secure financing and do repairs. *In re Brown*, 134 B.R. 134, 141 (Bankr.E.D.Pa.1991) (when the homeowner makes no effort to obtain financing or contract for financing directly from any lender and the contractor secures financing, the contractor cannot circumvent HIFA by claiming a direct loan exemption).

Debtor alleges that the initial documents were filled out on pre-printed Liberty Furnace contracts. Jack then told the Debtor that he would arrange for financing. Liberty Furnace admits that it has no employees and that independent contractors prepare contracts on its behalf. The Debtor claims that Liberty Furnace, through Jack, solicited the home improvement work. Jack then arranged for another man to visit the Debtor. This man arranged the financing for the Debtor's home improvements. Debtor alleges that she made no independent attempt to arrange for financing and was essentially passive during the entire financing transaction. For the foregoing reasons, we find that Debtor has stated a cause of action under HIFA, and that an evidentiary hearing is necessary to determine the role of Liberty Furnace in the procurement of financing.

 We also note that this action is not barred by the statute of limitations. The statute of limitations applicable to HIFA is controlled by 42 P.S. § 5527, which specifies that "[a]ny civil action which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." Thus, the statute of limitations for a claim under HIFA is six years. The financing for the Debtor's home improvement loan was obtained in December 1997 and work began in January 1998. The Debtor added Liberty Furnace as a party to this action on February 23, 2001. All pertinent events surrounding the home improvement contract occurred within six years. Therefore, we find the cause of action is not barred by the statute of limitations under the Pennsylvania Home Improvement Finance Act.

A status conference will be set to address pretrial and trial proceedings.